650 A.2d 1178

**Joann M. JOHNSON, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (McCARTER TRANSIT, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 21, 1994.

Decided Nov. 21, 1994.

440

John J. Petrush, for petitioner.

John D. O'Brien, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Joann Johnson (Claimant) appeals an order of the Workmen's Compensation Appeal Board which affirmed a referee's order denying her petition to reinstate her disability benefits.

## I. *Historical Facts*

This case has its genesis in January of 1991, when McCarter Transit (Employer) filed a petition to suspend Claimant's total disability benefits for a work related injury to her neck, which were being paid pursuant to a notice of compensation payable dated April 19, 1984. Claimant was being paid compensation based on an average weekly wage of $88.85.

The parties stipulated that Claimant had been offered a job as a bus matron by letter on January 25, 1991.[1] This position would be available beginning March 1, 1991, and paid $94 per week. Claimant did not apply for this position. Claimant testified that she had attempted to work as a bus matron in

---

1. The position of bus matron required Claimant to assist the bus driver while transporting emotionally or physically handicapped children to and from school.

October 1990, but had to quit after two days because her neck went into spasms and she could not continue performing the job.

At the referee's hearing, both Claimant and Employer presented medical testimony. Employer's doctor testified that Claimant was physically capable of performing the bus matron job, which involved two hours of work in the morning and two hours of work in the afternoon, five days a week. Claimant's doctor testified that Claimant's condition had improved since October 1990 and that there was "no physical reason why claimant could not perform the work of a bus matron for two hours in the morning and two hours in the afternoon except for what has happened to her before." (Finding of Fact 9(j).) He conceded that she should at least give the job a try. The referee, Referee Albert Wehan, found Employer's medical testimony more persuasive than Claimant's medical testimony to the extent that the doctors' opinions were in conflict.

Medical testimony also established that Claimant continued to suffer residual injury to her neck. By order dated April 16, 1992, the referee concluded that Employer had sustained its burden of proving that work was available to Claimant within her physical limitations. The available position as bus matron paid more than Claimant's pre-injury average weekly wage; therefore, the referee concluded, Employer was entitled to a suspension of Claimant's benefits as of March 1, 1991. Neither party appealed this decision.

## II. *Facts of the Present Appeal*

On May 15, 1992, Claimant filed a petition for reinstatement which is the subject of the present appeal. Claimant averred that, after receiving the referee's April 16, 1992 order, she informed Employer that she was willing to return to work as a bus matron. However, the position was no longer available.

The claim was assigned to a second referee, Referee Eric Jones, and he found that Claimant had not sustained her burden of proving that she is entitled to a reinstatement because "where there has been a previous finding of bad faith

in a petition to reduce claimant's compensation benefits because of job availability, the finding of a future unavailability of the job does not give rise to the claimant being entitled to compensation benefits." (Conclusion of Law No. 2.) Accordingly, her petition was denied, and the Board affirmed. This appeal followed.

### III. *Discussion*

■ Where a claimant seeks a reinstatement of benefits after a suspension, she has the burden of proving that, through no fault of her own, her earning power is once more adversely affected. *Acme Markets v. Workmen's Compensation Appeal Board (Gredzinski)*, 167 Pa.Commonwealth Ct. 100, 647 A.2d 963 (1994); *Busche v. Workmen's Compensation Appeal Board (Townsend & Bottum, Inc.)*, 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983).

■ Claimant argues that since the first referee did not make an explicit "finding" on the issue of Claimant's "bad faith" in not accepting the proffered employment, the second referee improperly "read the first referee's mind" when he denied Claimant's petition. We disagree with Claimant's analysis and reject her argument.

■ The law is clear that where an employer presents a claimant with an offer of available work within the claimant's physical limitations, and the claimant refuses to accept such an offer, the claimant's benefits may be modified. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The term "bad faith" as used in this context, does not denote overt malfeasance on the part of the claimant, but is merely the characterization of Claimant's action for refusing to follow up on a job referral without a sufficient reason. *Id.* The consequences of such a failure and the case law underlying the resulting legal principle, were extensively reviewed by this Court in *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corp.)*, 158 Pa.Commonwealth Ct. 547, 632 A.2d 596 (1993), *remanded on other grounds*, 537 Pa. 433, 644 A.2d 729 (1994):

[W]e hold that where a claimant acts in bad faith in refusing suitable and available work, permanent at the time it is offered, the claimant's benefits are reduced for an indefinite period by the amount of earnings the job would have produced. Where a claimant acts in bad faith in refusing a position which is only a temporary job when offered, benefits will be modified for a period equal to the length of time the job was actually available.

*Id.* at 555, 632 A.2d at 600 (footnote omitted). Clearly, then, failing to apply for an available position within a claimant's physical limitations is "bad faith" unless the claimant demonstrates an adequate reason for refusal, such as the situation where bidding on a light duty job would result in a loss of status and seniority under a union collective bargaining agreement. *Fledderman v. Workmen's Compensation Appeal Board (Stackpole Carbon Corp.),* 93 Pa.Commonwealth Ct. 44, 500 A.2d 215 (1985).

With the law in mind, the logic of Referee Jones's award is clear. First, Referee Wehan, in considering Employer's petition to suspend Claimant's benefits, found that the bus matron position was within Claimant's physical limitations as of March 1, 1991. However, Claimant refused to accept this position. As a consequence, Claimant's benefits were suspended, since the wages for the bus matron job were higher than Claimant's pre-injury wages. Although the referee did not make an explicit finding that such conduct of Claimant was in "bad faith," that is, Referee Wehan did not use the term "bad faith," the conclusion is obvious from his disposition of the matter. Referee Wehan suspended Claimant's benefits and it is inescapable that Claimant's conduct *was* in "bad faith" as the Supreme Court used the term in *Kachinski.*

Second, failure to apply for an available position can not be remedied by subsequent action. Our decision in *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick),* 149 Pa.Commonwealth Ct. 362, 614 A.2d 779 (1992), *petition for allowance of appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993), relied upon by Referee Jones, is directly on point. In that case, the employer obtained a modification of claimant's bene-

fits after claimant refused a light duty job. One month after the referee's order granting the modification, the claimant attempted to accept the light duty position that had been previously offered. The job was no longer available. The claimant then petitioned for a reinstatement of his total disability benefits. Affirming the Board's decision denying this petition we stated that:

Where ... a claimant has failed to pursue jobs in good faith, we do not believe the employer has the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work. As the board states in its decision, *claimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations.* In order to receive a reinstatement of total disability benefits, claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.

*Id.* at 365, 614 A.2d at 780 (emphasis added). *See also Bennett; Korol v. Workmen's Compensation Appeal Board (Sewickley Country Inn),* 150 Pa.Commonwealth Ct. 279, 615 A.2d 916 (1992) (a claimant who once rejects a job in bad faith cannot later remedy her bad faith by obtaining a similar job on her own); *Jayne v. Workmen's Compensation Appeal Board (King Fifth Wheel),* 137 Pa.Commonwealth Ct. 211, 585 A.2d 604 (1991) (a claimant who was required to accept an offered position by 7 a.m. but who did not contact employer until 1 p.m., has rejected a job in bad faith).

Claimant did not aver or present evidence that her physical condition had changed since her benefits were suspended. Nor does Claimant dispute that Employer had a job available on March 1, 1991, and that she failed to pursue it. Accordingly, the referee's conclusion that Claimant failed to sustain her burden of proving that she is entitled to have her benefits reinstated, was absolutely correct.

Claimant also argues that her position is analogous to the situation of a disabled employee who accepts modified work,

but is subsequently laid off. We disposed of this issue definitively in *Bennett:*

> In the case of an employee who has accepted and performed the light-duty job, the focus of the inquiry is on the employee's reason for losing the job, *i.e.,* whether the loss of earnings was through "no fault of his own." See *Smith [v. Workmen's Compensation Appeal Board (Futura Industries),* 80 Pa.Commonwealth Ct., 508, 471 A.2d 1304 (1984) ]; *Woodard v. Workmen's Compensation Appeal Board,* 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980). Where, however, the employee has not even accepted the proffered light duty job at the outset, this same principle does not apply because the employee, being at that time unemployed as a result of his rejection of acceptable employment, has no earnings to lose. In this situation, the inquiry is to determine whether the employee acted in "good faith" in refusing the job in the first instance.

*Bennett,* 158 Pa.Commonwealth Ct. at 551–52, 632 A.2d at 598. Thus, given that Claimant failed to pursue an available job in good faith, she must now live with the consequences of her decision. *Bennett; see also Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Lewis),* 113 Pa.Commonwealth Ct. 230, 536 A.2d 870 (1988) (a claimant who chooses not to follow up employer's job referrals may be on dangerous ground).

Affirmed.

### ORDER

NOW, November 21, 1994, the order of Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.