IGA FOOD MART, Petitioner,

v.

**WORKMEN'S COMPENSATION
APPEAL BOARD (KUGLER),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 2, 1996.
Decided April 4, 1996.

Matthew D. Dempsey, for Petitioner.

Terrence V. Gallagher, for Respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Employer IGA Food Mart petitions for review of the August 9, 1995 order of the Workmen's Compensation Appeal Board (Board) denying its petition for modification and suspension of Claimant Earl Kugler's workers' compensation benefits. We reverse and suspend benefits as of May 11, 1992.

## Issues

The issues before us for review are (1) whether Claimant had received medical clearance by his treating physician for a light-duty courier job offered by his Employer at no loss of earnings; and (2) whether Claimant lost his right to continued partial disability compensation, when he rejected Employer's courier job and elected to contin-. ue working at a similar job which he had found on his own but which paid less than pre-injury wages.

## Facts

On May 26, 1989, Claimant sustained a back injury while in the course and scope of his employment with Employer. Employer issued a notice of compensation payable on. June 29, 1989 providing for workers' compensation benefits in the amount of $272.60 per week. Thereafter, Claimant had intervening periods of total and partial disability and the parties entered into numerous supplemental agreements.

Claimant underwent back surgery in January, 1990 and has since recovered from the surgery. Claimant's treating physician, Dr. Eugene Chiavacci, a board-certified orthopedic surgeon, completed a physical capabilities evaluation regarding the Claimant on July 16, 1991 and released Claimant to light-duty work.

In February of 1991, Claimant had secured employment as a security guard/courier with Northeastern Bank of Pennsylvania. This was a full-time, light-duty job, which Claimant located through his own efforts. This

position paid wages less than Claimant's pre-injury average weekly wage.[1]

On April 18, 1992, Employer offered Claimant a position of courier at wages equal to his pre-injury average weekly wage. This job was available to Claimant on May 11, 1992. Employer had previously referred to Claimant a position as a greeter in July of 1991 at a wage equal to or greater than his pre-injury wage.

Claimant chose to remain at his position at Northeastern Bank. As a result, on July 8, 1992, Employer filed a petition to modify or suspend Claimant's compensation benefits, alleging that, as of April 16, 1992, all of Claimant's disability as a result of the injury changed so as to enable him to return to modified employment offered to him by Employer.

On June 21, 1994, Workers' Compensation Judge (WCJ) Armand Olivetti denied Employer's petition. WCJ Olivetti found that Claimant acted in good faith in voluntarily obtaining employment in a full-time, light-duty job prior to any job offers by Employer. Employer appealed to the Board. The Board affirmed WCJ Olivetti's decision but held that the issue of Claimant's good faith in obtaining employment on his own was irrelevant. The Board held that, under *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), the burden is on Claimant to prove that he exercised good faith in following-up on job referrals *made by Employer*. The Board affirmed WCJ's Olivetti's denial of Employer's petition, however, on the grounds that Employer's medical expert, Dr. Chiavacci, did not review the description of the courier job offered by Employer until April 27, 1993, the date of Dr. Chiavacci's deposition. The Board concluded, therefore, that Employer failed to meet its burden under *Kachinski*. Employer now appeals to this Court.[2]

---

1. The record reveals that Claimant and Employer entered into a supplemental agreement on April 21, 1992 which indicated that Claimant returned to work on February 23, 1992 at modified wages. His pre-injury wage was $555.49. His modified wage was $270.50. The difference between the wages equalled $284.99 and Claimant received

partial disability equal to two-thirds of the difference, or $189.99. (R.R. at 6a.)

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial

## Discussion

Section 413 of the Workers' Compensation Act (Act) provides for the modification, suspension, reinstatement or termination of a supplemental agreement.[3] Section 413 provides as follows:

A referee designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department of its referee, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed ... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772.

■ Employer sought modification or suspension of Claimant's benefits based on Claimant's alleged lack of good faith in pursuing the proffered employment with Employer. The *Kachinski* case sets forth a four-part test to determine whether benefits may be modified because work is available to a previously disabled claimant. An employer seeking to modify a claimant's benefits under *Kachinski* must produce medical evidence of a change in the claimant's condition. The employer must then produce evidence of a referral to a job actually available to the claimant and within the category of jobs for which claimant has been cleared. It is the claimant's burden of proving that he or she followed through on the referral in good faith. *Id.* at 252, 532 A.2d at 380.

### A. Medical approval

■ Employer first argues that the Board clearly erred in its finding that it had failed to establish that the jobs offered to Claimant had been medically approved by his treating physician as required under *Kachinski.*

The Board held that Employer did not satisfy the second prong of the *Kachinski* test because Dr. Chiavacci did not give medical clearance for the offered courier job until his deposition on April 27, 1993. Employer argues that the Board is mistaken. Dr. Chiavacci did state that he hadn't reviewed the courier position before his deposition. (R.R. at 76a.) However, he later indicated that he did give medical clearance for the courier position on August 18, 1992. (R.R. at 78a.)

■ Employer further argues that, under *Kachinski*, it is not required to obtain specific approval of a job referred to Claimant. Under Pennsylvania law, it is not necessary to obtain medical clearance for each specific job referral when the physician previously established restrictions for the claimant. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Cmwlth. 479, 568 A.2d 981 (1989), *petition for allowance of appeal denied*, 527 Pa. 656, 593 A.2d 426 (1990). Under *Kachinski* and its progeny, an employer need only prove that a claimant has been released to perform a certain category of work (e.g. light-duty) and that the available position falls within that category. Employer argues that the courier job referred to Claimant fell within the light-duty category to which Claimant had been released by Dr. Chiavacci. Therefore, Employer argues, the Board erred as a matter of law in holding that it failed to meet its burden under the second prong of the *Kachinski* test. We agree.

evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa. Cmwlth. 288, 572 A.2d 843 (1990).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

The record reveals that Dr. Chiavacci did specifically approve the courier position on August 18, 1992, albeit four months after it was offered to Claimant. (R.R. at 93a.) Further, Claimant had been released to full-time, light duty work with restrictions as early as July 16, 1991. (R.R. at 91a.) We have held that "it is not necessary to obtain medical clearance for each job referral...." *Lukens,* 568 A.2d at 984. A claimant must, however, be apprised of his medical clearance so that he may pursue job referrals. *Id.* Claimant does not allege that he was never informed of the fact that Dr. Chiavacci medically cleared him to perform light-duty work. On the contrary, Claimant sought out and obtained light-duty work on his own even before Employer referred any available positions to him.

Employer must refer jobs that fall within the category for which a claimant has been released. It need not get specific medical approval for every job referral that falls within the approved category of work. It is undisputed that the courier position referred to Claimant was within the category of light-duty work for which Claimant was released. Therefore, Employer met its burden under the second prong of the *Kachinski* test and the Board erred in finding to the contrary.

### B. Claimant's Rejection of Employer's Offer

■ Having concluded that Employer did indeed meet its burden under *Kachinski,* we must now determine whether Claimant met his burden of following-up on Employer's job offer in good faith. It is undisputed that Claimant rejected the courier position offered to him by Employer. Employer argues that Claimant did not act in good faith in rejecting the position offered to him and in choosing to remain at his position with Northeastern Bank at wages less than the position offered by Employer. Employer argues, therefore, that it is entitled to a suspension of Claimant's benefits.

Claimant argues that he has no duty to accept full-time, light-duty work when he has already obtained similar employment through his own efforts. Claimant contends that referrals by an employer must be made as part of a good faith attempt to return the injured employee to productive employment rather than a mere attempt to avoid paying compensation. Claimant relies upon *Korol v. Workmen's Compensation Appeal Board (Sewickley Country Inn),* 150 Pa.Cmwlth. 279, 615 A.2d 916 (1992), for the proposition that Claimant is not required to continue responding to job referrals when the nature and number of hours, together with the physical demands and medical clearance of the self-obtained position are substantially similar to those in the pre-injury job or in the jobs referred by the employer. We believe that the Supreme Court's more recent holding in *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa. 490, 640 A.2d 386 (1994) controls this case.

In *Dillon,* the Supreme Court addressed the issue of economic disability.

> Inasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may change from partial to total or vice versa based on a change in one with or without a change in the other. Commonwealth Court correctly recognized this in *Lukens* when it held that the 'medical evidence of a change in condition' criterion recognized in *Kachinski* applies only when the employer 'seeks to modify a claimant's benefits *on the basis that he has recovered some or all of his ability,*' *Kachinski,* 516 Pa. at 252, 532 A.2d at 380 (emphasis added), and such proof 'is not required when that is not the basis for seeking a decrease in benefits.' *Lukens,* 130 Pa.Commonwealth Ct. at 484, 568 A.2d at 984.

*Dillon,* 536 Pa. at 501–02, 640 A.2d at 392.

In *Dillon,* a claimant sought modification of his award for partial disability to one for total disability on the basis that no jobs within his physical restrictions were available. The Supreme Court awarded total disability compensation. In doing so, the Court quoted from *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1991):

A 'suspension of benefits' is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation.

*Id.* at 32, 584 A.2d at 304.

■ For purposes of receiving workers' compensation benefits, "disability" is synonymous with a loss of earning power. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 545 A.2d 465 (Pa. Cmwlth.1988), *petition for allowance of appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989). Claimant remained partially disabled as a result of his work-related injury so long as his earning power was less than his pre-injury wage. Once Claimant's earning power returned to his pre-injury wage, he was no longer disabled under the Act. Employer offered Claimant a position which would pay him wages equal to his pre-injury wage. Under *Kachinski,* Claimant was obligated to accept that offer of available employment in good faith or suffer a suspension of his benefits.

Claimant's failure to accept a legitimate offer of employment which would have returned him to his pre-injury earning capacity entitles Employer to a suspension of Claimant's benefits as of May 11, 1992, the date on which the WCJ found that the job became available to Claimant. (R.R. at 62a.) Despite our holding, we commend Claimant for his diligence in obtaining a full-time, light-duty position through his own efforts long before Employer's offer of employment. It is rare for this Court to see a workers' compensation claimant exhibit such a desire to return to the work force. Unfortunately for Claimant, the law requires us to conclude that as of May 11, 1992, he was not disabled in the economic sense.

For the reasons stated above, we reverse the order of the Board and suspend Claimant's workers' compensation benefits as of May 11, 1992.

*ORDER*

AND NOW, this 4th day of April, 1996, the order of the Workmen's Compensation Appeal Board dated August 9, 1995 at No. A94–1829 is hereby reversed.