Eugene ROYAL, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (MAYFIELD FOUNDRY, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 18, 1998.
Decided Jan. 11, 1999.

---

Robert B. Woomer, Pittsburgh, for petitioner.

William J. Walls, Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Eugene Royal (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) which had granted the petition of Mayfield Foundry, Inc. (Employer) to suspend Claimant's benefits.

On July 22, 1993, Claimant injured his right shoulder and left finger while working as a foundry supervisor for Employer. Pursuant to an agreement for compensation, Claimant received temporary total disability benefits after undergoing surgery that rendered Claimant totally disabled during the winter of 1993–1994. His doctor released Claimant to light-duty work in March of 1994; however, Employer did not have a light-duty job available for Claimant at that time. Through his own efforts, Claimant found and accepted a light-duty job with a

different employer, Hussey Copper, at wages less than his pre-injury wages.[1]

On April 5, 1995, while Claimant was still employed by Hussey Copper, Employer offered Claimant the opportunity to return to his pre-injury job with modified physical requirements, so as to meet Claimant's light-duty restrictions, at his time-of-injury pay, benefits, and work schedule. On April 25, 1995, Claimant turned down Employer's offer and decided to remain at his job with Hussey Copper, despite the loss of income by doing so.

Employer filed a petition to terminate benefits on May 10, 1995, and later amended the petition to request a suspension of benefits. The parties entered into a stipulation of the above-described facts after a third hearing held on February 21, 1996. In addition to the stipulated facts, the WCJ made the following supplemental findings of fact. At the first hearing on August 8, 1995, Claimant testified that he declined Employer's offer primarily because of "economic factors." More specifically, Claimant expressed fear that Employer would "go under in two years," while his current employer, Hussey Copper, had been in business for over 50 years and, he thought, would remain in business. Furthermore, Claimant admitted that he did not discuss the offer with Employer's general manager; instead, Claimant sent a letter dated April 25, 1995, in which he declined the offer, stating that it was in his best interest to remain in his current position. The WCJ found that Employer offered Claimant employment within his physical restrictions and that this employment would have paid Claimant an amount equal to his pre-injury wage. The WCJ specifically found that Claimant's "current wage loss is the result of his declining the job offered by [Employer] because of economic reasons." (WCJ's Decision at 3.) Accordingly, the WCJ issued an order dated February 28, 1996,

granting Employer's suspension petition as of April 5, 1995.

■ Claimant appealed from the WCJ's decision to the Board, arguing that he should not be forced to give up his current employment and accept Employer's offer in order to preserve his compensation benefits. The Board rejected Claimant's argument, holding that Employer had met its burden under the applicable test set forth by our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987):

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs) which fits in the occupational category for which the claimant has been given medical clearance, *e.g.*, light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job, then claimant's benefits should continue.

*Id.* at 252, 532 A.2d at 380. The Board determined that Claimant's rejection of Employer's offer was not in good faith and affirmed the WCJ's decision by an order dated November 18, 1997. This appeal followed.

On appeal,[2] Claimant argues that: (1) he did not act in bad faith by rejecting Employer's offer; and (2) the WCJ erred in relying on findings of fact made in addition to those provided in the parties' stipulation of facts.

---

1. After beginning employment with Hussey Copper on April 18, 1994, Claimant received partial disability benefits in the amount of $215.44 per week pursuant to a supplemental agreement dated April 22, 1994. Another supplemental agreement was executed on January 13, 1995, which reduced Claimant's partial disability benefits to $189.56 per week, as per a pay increase received at Hussey Copper.

2. This Court's review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workers' Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

**1148**

Under Section 413 of the Workers' Compensation Act (Act), an employer may file a suspension petition to either reduce or eliminate benefits on the theory that work exists which the claimant is medically capable of performing and for which the claimant will be paid a sum equal to or greater than his pre-injury wage.[3] Disability is synonymous with earning power; thus, where the employer shows that the claimant can earn pre-injury wages, the claimant is no longer disabled in the legal sense, and benefits will be suspended. *See Dillon v. Workers' Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994); *IGA Food Mart v. Workers' Compensation Appeal Board (Kugler)*, 674 A.2d 359 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 649, 683 A.2d 886 (1996). Consequently, when an employer offers a claimant a position equal in pay to his pre-injury wage and within his physical limitations, a claimant is "obligated to accept that offer of **available** employment in **good faith** or suffer a suspension of his benefits." *IGA Food Mart*, 674 A.2d at 363. (emphasis added). "Lack of good faith," as used in this context, "does not denote overt malfeasance on the part of the claimant, but is merely the characterization of [c]laimant's action for refusing to follow up on a job referral without a sufficient reason." *Johnson v. Workmen's Compensation Appeal Board (McCarter Transit, Inc.)*, 168 Pa.Cmwlth. 439, 650 A.2d 1178, 1180 (1994). Although we have recognized that a claimant's mere personal preference not to engage in a certain type of employment is not a "sufficient reason" to refuse to follow-up on a job referral, *Korol v. Workmen's Compensation Appeal Board*

*(Sewickley Country Inn)*, 150 Pa.Cmwlth. 279, 615 A.2d 916 (Pa.Cmwlth.1992), this Court has also held that a claimant's refusal would not be lacking in good faith where the light-duty job offered is considered "**unavailable**" because it would require the claimant to forfeit his status and seniority under a union collective bargaining agreement. *See St. Joe Container Company v. Workmen's Compensation Appeal Board (Staroschuck)*, 141 Pa.Cmwlth. 672, 596 A.2d 1193 (Pa. Cmwlth.1991), *aff'd.*, 534 Pa. 347, 633 A.2d 128 (1993); *Fledderman v. Workmen's Compensation Appeal Board (Stackpole Carbon Corp.)*, 93 Pa.Cmwlth. 44, 500 A.2d 215 (Pa. Cmwlth.1985);

The facts here are remarkably similar to those in *IGA Food Mart*, and we believe our holding in that case is controlling on the issue of whether Claimant acted in good faith. The claimant in *IGA Food Mart* sustained a back injury while working for his employer. The claimant underwent back surgery, recovered and was released to light-duty work. Thereafter, the claimant located, through his own efforts, a full-time light-duty job with another employer, but at wages less than his pre-injury wage. Sometime later, the claimant's employer offered him a position at a wage greater than his time-of-injury wage, but the claimant refused and chose to remain at his new position. The employer filed a petition to suspend the claimant's benefits, but a WCJ denied the petition, holding that the claimant had acted in good faith by obtaining alternate employment. On appeal to this Court, we reversed the Board's decision to affirm the WCJ and held that the claimant did not act in good faith by reject-

---

3. Section 413 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772, provides in pertinent part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date

upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed: Provided, .... [t]hat where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, *unless it be shown that the loss in earnings does not result from the disability due to the injury.*

77 P.S. § 772. (emphasis added).

ing Employer's offer of available employment and remaining at a lower paying position out of personal preference. Accordingly, we determined that:

[c]laimant's failure to accept a legitimate offer of employment which would have returned him to his pre-injury earning capacity entitles Employer to a suspension of Claimant's benefits as of ... the date on which the WCJ found that the job became available to Claimant.

*IGA Food Mart,* 674 A.2d at 363.

■ Here, Claimant, to his credit and through his own efforts, found alternative employment at wages which were lower than his pre-injury wage after he recovered from surgery and was released to light-duty work. When Employer made a light-duty job available to Claimant at his pre-injury wage, Claimant's rejection of that offer was based upon Claimant's own subjective fear that Employer was going to go out of business, a fear that Claimant did not support with any facts. Claimant here, like the claimant in *IGA Food Mart,* did not have a sufficient reason for refusing Employer's offer of an available job. This situation is distinguishable from cases where we have held that a claimant's refusal was not in bad faith because the refusal was based upon the claimant's potential loss of union seniority under a collective bargaining agreement. *See Fledderman.* Therefore, under our holding in *IGA Food Mart,* Claimant's refusal to accept an available job that would have returned him to his time-of-injury earning capacity was not in good faith, and, accordingly, Employer is entitled to a suspension of Claimant's benefits as of the date that the job was made available to Claimant.

Claimant argues that the issue of good faith/bad faith should be controlled by our decisions in *Korol* and *Beckett v. Workmen's Compensation Appeal Board (Keyserv Group),* 674 A.2d 1179 (Pa.Cmwlth.1996). In *Korol,* we held that, once a claimant becomes employed as a result of his own efforts, he is not obligated to continue responding to job referrals if the new position's hours are substantially similar to those for which he is medically cleared, and, if so cleared, those hours are substantially similar to the number of hours worked on the job or jobs to which he is being referred by the employer. In *Beckett,* we extended our holding in *Korol* by adding the requirement that the modified job must be substantially similar not only in hours worked, but also in wages earned. Therefore, a claimant is required to accept a job offered by the employer unless the claimant already is earning a wage substantially similar to his pre-injury wage. Our reasoning for such a conclusion was as follows:

Otherwise, an employer may suffer a financial detriment because a partially disabled claimant who, admittedly, may prefer the lower paying employment does not receive wages equal to or nearly equal to his time-of-injury job. Such a circumstance was not embraced or ever contemplated by the inherent humanitarian purposes of the Workers' Compensation Act, which act was designed to alleviate the economic burdens caused by a claimant's loss of earning power.

*Beckett,* 674 A.2d at 1181 (footnote omitted). In *Beckett,* the employer had referred the claimant to seven positions deemed medically suitable by his physician. The claimant failed to follow up on those positions, however, because he had already secured other employment as a real estate agent, even though he testified that he was losing money by doing so. In affirming the Board's decision that the claimant had acted in bad faith by not responding to the job referrals, we noted that it is the responsibility of **both** the claimant and the employer "to allay the financial burdens of a work-related disability where a claimant can return to some type of work." *Id.* In other words, the claimant has the responsibility to seek work that provides earnings that are substantially similar to his time of injury wages.

■ Claimant's reliance on these cases to support his argument seems to be inconsistent with his position on appeal. Claimant originally asserted that he continued to suffer a wage loss when he refused to accept Employer's offer of a light-duty job at the same hours and pay as his time-of-injury job. Claimant appealed from the WCJ's decision because he wanted Employer to continue paying partial disability benefits while he

remained working with Hussey Copper at lower wages, but, as we discussed above, Claimant is not entitled to receive benefits under such circumstances. **However,** Claimant now argues that:

> [t]he claimant in this case was making less than he was making at the [Employer's] place of work, **but not substantially less.** He received pay raises and worked forty plus hours per week. Using the formula set forth in *Beckett,* it is clear that the claimant was employed in a substantially similar wages and capacity [sic], and accordingly, had no obligation to seek alternative work.

(Claimant's Brief at 9.) Although we agree that the holding in *Beckett* applies here, we reach a conclusion different from the one that Claimant draws in his brief. That is, if we accept Claimant's present argument that he is making substantially similar wages at his new place of employment, then, under workers' compensation law, Claimant is no longer "disabled" and thus no longer entitled to receive any benefits. It is clear under either of Claimant's positions that the WCJ correctly decided to grant Employer's petition to suspend benefits.

 Claimant next contends that the WCJ erred by making findings of fact in addition to those which were stipulated by the parties themselves, and states in his brief that "[t]he parties agree that all facts needed are in the stipulation." (Claimant's Brief at 9.) However, we could find nothing in the record to support such a claim. The statement from the brief quoted above did not appear in the stipulation, nor is there any indication in the record that either party expressly agreed that the WCJ was limited to relying **only** upon those facts contained in the stipulation in making a decision. Furthermore, Claimant did not raise this issue in his brief before the Board, nor did the Board address this issue in its decision. Accordingly, Claimant

has waived his right to argue the issue before this Court.[4] *See* Pa. R.A.P. 1551(a); *Allegheny Ludlum Steel Corp. v. Workmen's Compensation Appeal Board (Pavlik),* 89 Pa. Cmwlth. 121, 491 A.2d 968 (Pa.Cmwlth.1985) (generally, questions not raised before the Workmen's Compensation Appeals Board will not be considered by Commonwealth Court); *Pennsylvania Turnpike Com'n v. Workers' Compensation Appeal Board (Collins),* 709 A.2d 460 (Pa.Cmwlth.1998) (a party waived its right to raise an issue on appeal by failing to first raise it before the Workers' Compensation Appeal Board).

Therefore, the Board's order is affirmed.

### *ORDER*

NOW, January 11, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

4. Even if Claimant had properly preserved the issue for appeal, his argument would nonetheless fail. Claimant's contention that the WCJ "eliminated his opportunity to be heard" by making additional findings of fact is illogical. According to Claimant, "the purpose of this stipulation is to eliminate redundant lengthy and costly testimony." (Claimant's Brief at 9.) Yet, Claimant concedes that the stipulation at issue was entered

into only after the **third** hearing on February 21, 1998. (*See* Claimant's Brief at 4.) Furthermore, the WCJ's four additional findings of fact were based upon Claimant's own testimony at the first hearing held on August 8, 1995. Thus, we find that the WCJ properly substantiated her findings with evidence in the record, as required by Section 422(a) of the Act, 77 P.S. §834.