**Dolores BROOKS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (Brockway Glass), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 22, 1999.

Decided April 9, 2001.

Sanford S. Finder, Washington, for petitioner.

Terry L. M. Bashline, Pittsburgh, for respondent.

Before DOYLE, President Judge, KELLEY, Judge, NARICK, Senior Judge.

DOYLE, President Judge.

Dolores Brooks (Claimant) appeals to this Court from an order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of a Workers' Compensation Judge (WCJ) modifying Claimant's benefits. The narrow issue presented is whether a claimant's benefits can be modified pursuant to a determination of bad faith, where the claimant receives multiple job referrals from the employer, accepts one within her capabilities, then resigns to take another position, which she subsequently cannot perform. After a complete review of the record, we affirm.

Claimant sustained a work-related lumbosacral strain on November 3, 1982, within the course of her employment. Brockway Glass (Employer) accepted liability for the injury and, pursuant to a Notice of Compensation Payable, Claimant received temporary total disability benefits at a rate of $268.25 per week based on an average weekly wage of $402.38. On September 1, 1995, Employer filed petitions to modify and/or suspend compensation benefits alleging that, as of May 2, 1994,[1] Claimant had not cooperated with vocational rehabilitation efforts in finding appropriate employment.

Claimant testified that she was sent approximately nine referral notices by Employer for then open jobs, including positions with Reese Brothers (Reese) and Gabriel Brothers (Gabriel). In support of her burden of establishing good faith, Claimant testified that she applied for both positions, being initially hired for a telemarketing position with Reese.[2] According to Claimant, on her first day of training with Reese, she was offered a position with Gabriel as a seasonal cashier. Claimant did not return to work for Reese thereafter, but resigned and began employment with Gabriel.[3] Claimant con-

---

1. There is no reference within the record or the briefs submitted to this Court that explains why Employer sought to modify compensation as of May 2, 1994. The dispute in this matter has always revolved around the employment that Claimant was offered in August of 1994, well after the date sought by Employer for modification.

2. The job at Reese was from 4:30 p.m. to 9:30 p.m., Monday through Friday, and she would have worked twenty-five hours the first week and thirty hours the next with the possibility of working up to forty hours. The rate of pay was $5.00 per hour.

3. The work schedule at Gabriel averaged twenty-eight hours per week with a rate of pay of $4.25 per hour.

tended that the Gabriel position was more highly compensated and offered more hours than the Reese position. Claimant worked for Gabriel for approximately three weeks when she resigned because she complained that the lifting and repetitive arm movements involved in the position caused her pain and difficulty in performing her duties.

Claimant presented the testimony of Arlene Miller, who began working at Reese at the same time as Claimant. According to Miller's testimony, Claimant informed her that she was leaving the Reese position because Claimant believed that the Gabriel position was a better position that paid more and had more security, and because the sitting involved in the Reese position was causing discomfort in her back.

Employer presented the testimony of Kimberly DiPiazza, the Reese Branch Manager, who testified that she interviewed Claimant for the position of telemarketer on August 15, 1994. She hired Claimant, with training to begin on August 23, 1994. Ms. DiPiazza testified that Claimant attended one day of the three-day training period required for the position before she resigned, stating that her back and arm hurt too much. Ms. DiPiazza testified that employees were stationed at tables with ergonomically-designed chairs, that the position was sedentary and that the only lifting required was the lifting of a pen and a piece of paper.

Joseph Czuchan, Jr., the Gabriel store manager, testified that Claimant worked for him as a cashier in his Belle Vernon store from August 25, 1994 through September 16, 1994. While employed there, Claimant worked an average of 28 hours per week and earned $4.25 per hour.

At the conclusion of the hearings, the WCJ issued a decision and order granting modification as of August 15, 1994. The WCJ concluded that Claimant was able to perform the duties of the telemarketer position [4] and specifically determined that Claimant did not exercise good faith in quitting the job with Reese without first attempting to see if she could perform the work. The WCJ found Claimant's explanation for leaving Reese not credible as the job with Gabriel paid seventy-five cents less per hour and involved less hours per week. The WCJ modified Claimant's benefits based on these findings. Claimant appealed this determination to the Board.

On appeal to the Board, Claimant argued that the WCJ erred as a matter of law in modifying Claimant's benefits based upon the proffered job referral with Reese Brothers. Claimant maintained that there was insufficient evidence to support the finding that she failed to act in good faith when she left the Reese job to pursue the position with Gabriel. The Board, however, determined that there was sufficient evidence on this matter in the record to support the WCJ's modification of Claimant's benefits using the earning capacity from the job with Reese. Claimant appealed to this Court.[5]

The law is clear that where an employer presents a claimant with an offer of available work within claimant's physical limitations, and the claimant refuses to

---

4. The WCJ noted that all of the medical witnesses believed Claimant was capable of sedentary work.

5. This Court's review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Morey v. Workers' Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

accept such an offer, the claimant's benefits may be modified. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The *Kachinski* Court delineated the following guidelines:

1. The employer who seeks to modify a claimant's benefits on the basis that [s]he has recovered some or all of [her] ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that [s]he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

516 Pa. at 252, 532 A.2d at 380. The Board noted that the instant matter concerns the third prong of the *Kachinski* test, *i.e.*, whether the claimant applied for an open job in good faith. While we agree that Claimant's conduct is tangentially related to the third *Kachinski* prong, the core of this case involves conduct after a claimant has met all of the requirements of the *Kachinski* test. It is uncontroverted that Employer provided Claimant with numerous referrals,[6] and Claimant made application to all referred positions except one, which was located outside her transportational limits.[7] Thus, what we are called upon to decide is whether a claimant, who accepts a position as a result of an Employer referral, but does not evidence good faith in the performance of that position by resigning from that job to accept another Employer-referred position, has effectively *rejected* the initial position and demonstrated bad faith.

 We are mindful that the term "bad faith," as used in this context, does not denote overt malfeasance on the part of the claimant, but is merely the characterization of Claimant's action for ending her employment without sufficient reason. *See, e.g., Westerwald Pottery Corp. v. Workmen's Compensation Appeal Board (Watters)*, 692 A.2d 1145 (Pa.Cmwlth.1997) (claimant who refused offers of employment from employer referrals because of number of hours and rate of pay evidenced bad faith); *IGA Food Mart v. Workmen's Compensation Appeal Board (Kugler)*, 674 A.2d 359 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 649, 683 A.2d 886 (1996) (concluding that claimant exhibited bad faith by failing to follow up on employer's offer of courier position at wage equal to his pre-injury wage, where claimant rejected offered position, choosing to remain at courier position which he had obtained on his own and which paid less than position offered by employer); and *Johnson v. Workmen's Compensation*

---

**6.** Employer provided referrals to Claimant for the following positions: Sales person at Afterthoughts of Greensburg; Dental Receptionist for General Dentistry of Mt. Pleasant; Sales Representative for Estee Lauder at the Bon Ton in Washington; Customer Service Representative for Giant Eagle in Monessen; Restaurant Cashier for the 76 Truck Stop in Smithton; Inventory Clerk for Montgomery Ward in Charleroi; Sales Associate for 14 KT Connection at the Franklin Mall in Washington; Counter person for the Chartiers Dry Cleaners in Bridgeville; Estee Lauder Counter Manager for Hess's in Washington; Cashier at Gabriel Brothers in Belle Vernon; and Telemarketer for Reese Brothers in Charleroi.

**7.** Claimant did not apply for the Counter person position with the Chartiers Dry Cleaners in Bridgeville, because it was approximately fifty miles from her home.

*Appeal Board (McCarter Transit, Inc.),* 168 Pa.Cmwlth.439, 650 A.2d 1178 (1994) (holding that where a claimant acts in bad faith by refusing suitable and available work, claimant's benefits are reduced for an indefinite period by the amount of earnings the job would have produced). The WCJ found that the telemarketer position was within Claimant's physical limitations and that Claimant was offered the job, accepted it, started working, and then voluntarily resigned to take another position after completing only one day of training.[8] Claimant's explanation was that she *thought* the Gabriel position paid more money and was a better job; but this was not borne out by the facts, as found by the WCJ. The position with Gabriel involved less hours at a lower rate of pay than did the position with Reese. In addition, Claimant provided no evidence to either her employer or the WCJ that she was unable to do the job at Reese.[9]

■ In the case of an employee who has accepted and performed a light-duty job, and then loses that work, the focus of the inquiry is on the employee's reason for losing the job. *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corp.),* 158 Pa.Cmwlth.547, 632 A.2d 596 (1993), *remanded on other grounds,* 537 Pa. 433, 644 A.2d 729 (1994). However, where a claimant rejects suitable employment, the same principle does not apply because the claimant is, at that time, unemployed because of the rejection. In this situation, the inquiry is to determine whether the employee acted in "good faith" in refusing the job. *Id.* at 598. We think that Claimant's attendance on only the first day of a three-day training period

is the equivalent of rejecting the position offered. Claimant left a job she could easily perform for a job that paid less money and required more effort. Clearly, Claimant's loss of earning power is not due either to her disability or no fault of her own, but due to her lack of good faith in pursuing work made available to her, which was within her physical limitations.

Claimant argues that she should not bear the risk if she takes another position referred to her by Employer's vocational expert and it turns out that the second job is too much for her. She argues that, once she accepts any job that is referred to her, she has met her burden of proof and cannot be faulted for choosing the wrong job to pursue. Claimant further argues that the WCJ apparently decided the bad faith issue on the mere fact that the telemarketing job paid more than the cashier's job. According to Claimant, this placed an impossible burden on her to try to decide which job proffered by Employer paid more and was easier. Claimant argues that such a burden has never been placed on a claimant.

■ Claimant has clearly misapprehended the decision of the WCJ. The WCJ determined that Claimant resigned from a position that was within her capabilities, which paid more than the Gabriel job, and which offered the opportunity to work more hours. This job was approved by her doctor. She had no need to look for other employment. More important to the WCJ's determination is that she resigned from the Reese job **before she even at-**

---

8. It must be noted that Claimant does not challenge these findings on appeal.

9. It is noted that Ms. DiPiazza testified that, in her exit interview with Claimant at Reese's, Claimant indicated that she was resigning be-

cause her back and her arm hurt. This, however, does not fully comport with Claimant's explanation to Ms. Miller, her witness and co-worker at Reese's, that she left because she had a better job at Gabriel's.

tempted to perform it.[10] The WCJ determined that Claimant's testimony that she resigned the telemarketing job because the cashier's job would be more lucrative was not supported by the evidence. Inherent in our Workers' Compensation jurisprudence is the principle that Claimant has an obligation to perform available, appropriate work in good faith. Claimant did not present any evidence that she was physically unable to perform the position at Reese's, and in fact all testifying physicians indicated that the Reese's job *was* within her abilities. Our Supreme Court has indicated that a Claimant's personal preferences in not pursuing available positions are of no consequence. *Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 671 A.2d 1135 (1996).

■ It is well established that a WCJ may modify a claimant's benefits based on wages provided by the first available job not pursued in good faith. *Associated Plumbing & Heating v. Workmen's Compensation Appeal Board (Hartzog)*, 126 Pa.Cmwlth.618, 560 A.2d 865 (1989). In the instant matter, the WCJ determined that the position with Reese was the first available job not pursued in good faith, and Claimant's benefits were modified accordingly. We find no error here, and therefore affirm the decision of the Board, which affirmed the decision of the WCJ.

### ORDER

NOW, April 9, 2001, the order of the Workers' Compensation Appeal Board in

10. *Eljer Industries v. Workers' Compensation Appeal Board (Evans)*, 707 A.2d 564 (Pa. Cmwlth.1998), is instructive in this matter. In *Eljer*, a claimant had the choice of two light-duty positions—a sprayer or a ware hustler. The claimant chose the sprayer position as it paid a higher hourly rate, albeit lower than his pre-injury wage. After three months of effort, the claimant began the ware hustler position because the claimant was unable to

the above-captioned matter is hereby affirmed.

satisfactorily perform the sprayer position. Because the ware hustler position paid less than both the sprayer position and his pre-injury wage, the claimant petitioned for an increase in benefits. The increase was granted because the claimant attempted the sprayer position in good faith, and his disqualification from the position was not because of any fault of his own.