**Anthony LIGGETT, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEALS BOARD (SEPTA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 23, 1995.
Decided Jan. 3, 1996.

---

F. Barbara Danien, for petitioner.

Paul M. Della Franco, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

This is an appeal by Anthony Liggett (Claimant) from an order of the Workmen's Compensation Appeal Board which granted, in part, Claimant's reinstatement petition. The award granted Claimant total disability benefits for the period from July 4, 1990 though December 31, 1990 to be paid by National Car Rental (National) (his second employer), but awarded only partial disability benefits after December 31, 1990, which were to be paid by the Southeastern Pennsylvania Transportation Authority (SEPTA) (his first employer).

The underlying facts are extensive. Claimant, while employed as a bus driver by SEPTA, sustained a work-related injury to his back on July 9, 1986, and, pursuant to a notice of compensation payable, initially received total disability benefits. On August 6, 1986, Claimant signed a final receipt,[1] but on March 8, 1989, pursuant to Claimant's August 14, 1986 petition to set aside, the final receipt was set aside by the order of a Workers' Compensation Judge (WCJ), and Claimant was awarded total disability benefits for the period from August 6, 1986 through August 3, 1987. Claimant's benefits were modified, however, as of August 4, 1987 to partial disability upon a finding by the WCJ that Claimant had failed to apply in good faith for

---

1. Claimant did not return to work with SEPTA after signing the final receipt. *See* Notes of Testimony of Liggett at 9.

proffered employment which was within his physical capabilities. The award of the WCJ was affirmed by the Board on January 26, 1990, and by this Court on September 11, 1990.[2] No further appeal was taken.

On February 26, 1990, after the WCJ's award but during the appeal process mentioned above, Claimant began working for National, operating a small bus. Claimant found this employment on his own, and he was employed at National until July 3, 1990, when he resigned alleging that his back condition had worsened and that he was no longer able to perform his job (" 'my back was locking on me' ... while driving the bus." (WCJ Finding of Fact No. 11.) As a result, Claimant filed a "reinstatement" petition[3] against SEPTA requesting total disability benefits due to the worsening of his condition. In response, SEPTA filed a petition to terminate alleging that Claimant had fully recovered from his work injury as of April 9, 1992, and joined National as a party defendant.

On July 30, 1993, the WCJ denied SEPTA's termination petition, and granted, in part, Claimant's modification petition, awarding Claimant total disability benefits against National from July 4, 1990 though December 31, 1990, and holding that Claimant suffered an *aggravation* of his July 9, 1986 injury while working for National. Claimant was also awarded partial disability benefits from SEPTA commencing on January 1, 1991, because the WCJ found that the aggravation of his original injury had "fully resolved" and further, found that Claimant's physical condition by January 1, 1991, was identical to his condition in August 1987 when he rejected proffered employment (see WCJ's award of

March 8, 1989), and identical to his physical status immediately prior to beginning work with National. Claimant appealed to the Board which affirmed.[4] Claimant now appeals to this Court.

The narrow issue before this Court is one of first impression: May a claimant, whose total disability benefits had previously been modified to partial disability benefits because of the claimant's refusal of a job offer, but who subsequently obtains a job on his own, purge the initial bad faith so that in a subsequent petition for modification that bad faith is not a consideration? Stated another way: what is the burden of proof needed for modifying partial disability benefits to total disability benefits where a claimant has in the past shown bad faith, but then worked on his own accord?

Claimant perceives the essential issue as being totally a question of the burden of proof, and accordingly, argues that he was not required to prove that his physical disability had increased, but only that he need show that through no fault of his own his earning power has once again been adversely affected due to his original disability. Claimant asserts that he lost his job at National through no fault of his own and, since SEPTA did not again demonstrate work availability, his earning power as the result of his original injury is again adversely affected. Specifically, Claimant argues that he only had to prove that he could no longer perform his job **with National,** and that he remedied his bad faith previous job rejection by subsequently finding a job on his own.

It is true that under certain circumstances a claimant who is receiving partial disability benefits and who petitions for total

---

**2.** No. 284 C.D.1990 filed September 11, 1990.

**3.** Claimant incorrectly titled the petition as one for reinstatement; however, a reinstatement petition is filed where the claimant's benefits have been suspended or terminated, whereas a modification petition suggests, as in this case, that the claimant is currently receiving benefits which the claimant seeks to change. Section 413 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772, does not make a distinction in the petitions to be filed for reinstatement and modification, and the form of the petition is not controlling. In fact, the

Bureau of Workmen's Compensation uses one generic form with blocks to check to indicate which type of petition is being filed. A petition will be deemed to have been filed pursuant to whichever section of the Act is appropriate. *Volk v. Workmen's Compensation Appeal Board (Consolidation Coal Co.),* 167 Pa.Cmwlth. 75, 647 A.2d 624 (1994).

**4.** National also appealed to the Board, alleging that it never received notice of the proceeding; the Board held otherwise, and National did not further appeal.

disability benefits may meet his burden by proving that **through no fault of his own his earning power is once again adversely affected, and that the original disability continues,** *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.),* 537 Pa. 223, 642 A.2d 1083 (1994); *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries),* 536 Pa. 490, 640 A.2d 386 (1994); however, this case does not involve a situation where that principle is dispositive of the issue. This case brings to the equation the additional ingredient of a claimant's lack of good faith.

In *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.),* 149 Pa. Cmwlth. 362, 614 A.2d 779 (1992), *petition for allowance of appeal denied,* 533 Pa. 654, 624 A.2d 112 (1993), we held that an employer is not required to show job availability once a claimant has demonstrated bad faith.[5] We stated:

> Where we have a finding that a claimant has failed to pursue jobs in good faith, we do not believe the employer has the responsibility of keeping a job open indefinitely waiting for the claimant to decide when he wants to work.... *[C]laimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations. In order to receive a reinstatement of total disability benefits, claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.*

*Id.* at 780 (emphasis added).

■ We held in *Korol v. Workmen's Compensation Appeal Board (Sewickley Country Inn),* 150 Pa.Cmwlth. 279, 615 A.2d 916

(1992) that a claimant who rejects any position in bad faith, cannot later cure the bad faith by obtaining a position on his or her own.[6] We said that the claimant's "bad faith [would become] 'fixed' and claimant would be bound by her actions." *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corp.),* 158 Pa.Cmwlth. 547, 632 A.2d 596, 599 (1993) (analyzing *Korol* ), *remanded on other grounds,* 537 Pa. 433, 644 A.2d 729 (1994). The proper focus for the tribunals is to "look at the situation at the beginning of the proffered permanent employment not at the end of that employment...." *Id.,* 632 A.2d at 598–99 (emphasis in original). Moreover, "[i]t is eminently fair to require claimants who act in bad faith to live with the foreseeable consequences of their actions and a rule which would discourage bad faith on the part of claimants would further ensure the cooperation of efforts necessary to maintain the [workers' compensation] system." *Id.* 632 A.2d at 600.

In the instant case, we are not dealing with a situation where a claimant through no fault of his own suffered a loss of earning power, but a situation where the loss of earnings is predicated upon a refusal of an available position. It is not disputed that Claimant demonstrated bad faith in refusing a position offered within his physical capabilities on August 4, 1987, and logically we must hold that bad faith is not eradicated by his subsequent employment. In this case, for Claimant to be eligible for total disability benefits, he would have to prove that his physical condition has worsened. *Bennett.*

Claimant here did not prove that his physical condition had further worsened before he began work with National. The WCJ found that the Claimant's medical experts, Dr. John

---

5. *See also Stevens v. Workmen's Compensation Appeal Board (Braun Baking Co.),* 657 A.2d 126 (Pa.Cmwlth.1995) (where the claimant failed to apply in good faith for employment positions from 1986 through 1990, he is not eligible for total disability benefits, even if the employer reneges on an offer of a position in 1990, unless the claimant proves a change in condition); *Johnson v. Workmen's Compensation Appeal Board (McCarter Transit),* 168 Pa.Cmwlth. 439, 650 A.2d 1178 (1994); *Younkin v. Workmen's Compensation Appeal Board (Bethlehem Mines Corp.),* 158 Pa.Cmwlth. 276, 631 A.2d 786 (1993).

6. The claimant in *Korol,* in bad faith, refused to apply for several proffered positions, one which paid wages equal to or above her time-of-injury position, and therefore, her benefits were suspended. Months later, the claimant found her own job which paid less than her time-of-injury job, and she petitioned for partial disability benefits. We held that she was ineligible for partial benefits because her loss of earnings was not caused by her injury but was due to her bad faith refusal of work.

Bertagnolli and Dr. Dennis Zaslow were credible as to their testimony that Claimant had aggravated a preexisting injury while employed by National, but were not credible as to their testimony that Claimant was now totally disabled.[7] Additionally, Dr. Bertagnolli conceded that Claimant's condition had returned to the physical level it was prior to working for National, and the WCJ concluded that Claimant's injury had not worsened.[8]

Accordingly, since Claimant demonstrated bad faith in refusing an employment offer, he was required to present evidence that a change in his physical condition has occurred to receive total disability, which Claimant has failed to do. Thus, we affirm the Board, and hold that Claimant is only eligible to receive partial disability benefits from SEPTA. In effect, Claimant's status reverts back to the status prior to his employment with National.

### ORDER

NOW, January 3, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

7. The WCJ found that the testimony of SEPTA's expert, Dr. Stanley Askin, that Claimant was **fully** recovered from all of his injuries, was also not credible.

8. "Interestingly, the Claimant **acknowledged** his ability to return to prior duties as a bus operator as of November 1, 1990 (N.T., p. 18), essentially conceding his back condition at that time was similar to when he began work for National (N.T., pp. 40–42)." (WCJ's Opinion at 11.)