**Donald DOUGLAS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HARMONY CASTINGS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 13, 2002.
Decided Feb. 18, 2003.
Reargument and Request for Remand Denied April 14, 2003.

Daniel K. Bricmont, Pittsburgh, for petitioner.

Michael D. Sherman, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge FRIEDMAN.

Donald Douglas (Claimant) petitions for review of the June 21, 2002, order of the Workers' Compensation Appeal Board (WCAB), which reversed the workers' compensation judge's (WCJ) decision to grant Claimant's reinstatement petition and to award Claimant attorney's fees based on an unreasonable contest. We reverse in part and affirm in part.

On July 30, 1996, Claimant sustained a work-related lumbar sprain while employed by Harmony Castings, Inc. (Employer), and Employer began paying total disability benefits pursuant to a notice of compensation payable. (WCJ's 10/23/00 Findings of Fact, No. 3.) Subsequently, Employer filed a suspension petition, seeking to suspend Claimant's benefits as of December 15, 1997, as well as a request for supersedeas; the supersedeas was denied.[1] (WCJ's 7/20/99 Findings of Fact, Nos. 1, 5.) In the petition, Employer alleged that it had offered Claimant appropriate light duty work at wages equal to or in excess of Claimant's pre-injury average weekly wage, but that Claimant refused the position. (WCJ's 7/20/99 Findings of Fact, No. 1.) At a December 11, 1998, hearing on the suspension petition, Employer's counsel indicated that only the period from December 15, 1997, to August 18, 1998, remained in dispute because, on August 18, 1998, Claimant returned to work at his pre-injury wage, accepting Employer's previous offer of modified duty. (*See* WCJ's 7/20/99 Findings of Fact, No. 8.) As a result, the parties exe-

---

[1] By interlocutory order dated February 9, 1998, the WCJ granted a suspension of benefits from January 5, 1998, through January 12, 1998, based on Claimant's return to work. However, the WCJ ordered Employer to pay Claimant total disability benefits as of January 13, 1998. (WCJ's 7/20/99 Findings of Fact, No. 5.)

cuted a supplemental agreement suspending Claimant's benefits. (WCJ's 7/20/99 Findings of Fact, No. 8; R.R. at 61a.)

In a decision issued July 20, 1999, the WCJ granted Employer's suspension petition effective February 5, 1998, the date on which he found Claimant was able to perform the light duty sorter position offered by Employer.[2] (WCJ's 10/23/00 Findings of Fact, No. 3; WCJ's 7/20/99 Findings of Fact, No. 22.) In his decision, the WCJ took note of the supplemental agreement suspending Claimant's benefits based on his return to work with Employer in this light duty position. (WCJ's 7/20/99 Findings of Fact, No. 22; see WCJ's 10/23/00 Findings of Fact, No. 8.) No appeals were taken from the WCJ's July 20, 1999, order. (WCJ's 10/23/00 Findings of Fact, No. 3.)

Claimant continued to perform the light duty sorter position until he was assigned to another light duty position wrapping fiberglass filters. (See R.R. at 15a–16a, 22a–23a.) Claimant was performing this wrapping position on August 6, 1999, when he was laid-off. (WCJ's 10/23/00 Findings of Fact, No. 4.)

On August 12, 1999, Claimant filed a reinstatement petition; he also sought attorney's fees, alleging an unreasonable contest by Employer. (WCJ's 10/23/00 Findings of Fact, No. 1; R.R. at 1a–3a.) Employer filed an answer asserting that Claimant is not entitled to a reinstatement of benefits and that Employer's contest of the petition is reasonable because it presents factual discrepancies to be resolved by the WCJ. (WCJ's 10/23/00 Findings of Fact, No. 2; R.R. at 4a.)

At the September 27, 1999, hearing on the reinstatement petition, Claimant testified that he returned to light duty work with Employer on August 18, 1998, and was laid off on August 6, 1999, at which time his supervisor told him that no light duty work was available. (WCJ's 10/23/00 Findings of Fact, No. 4; R.R. at 15a.) Claimant also testified that he began treating with Gary McCall, D.C., in December 1998 or January 1999 and that he still is receiving treatment from Dr. McCall. (R.R. at 24a, 25a.) Finally, Claimant stated that he was ready, willing and able to perform the light duty wrapping position. (WCJ's 10/23/00 Findings of Fact, No. 4; R.R. at 31a.) The WCJ found Claimant's testimony credible. (WCJ's 10/23/00 Findings of Fact, No. 8.)

Employer offered only medical evidence in defense of the reinstatement petition. None of that evidence disputed Claimant's testimony that he was laid off and that no jobs were available to him.

Based on Claimant's testimony, the WCJ found that Claimant met his burden of proof with regard to reinstatement. (WCJ's 10/23/00 Findings of Fact, No. 8.) Accordingly, the WCJ granted Claimant's reinstatement petition and reinstated Claimant's benefits as of August 6, 1999. Additionally, the WCJ found that Employer did not have a reasonable basis to contest Claimant's reinstatement petition, and, consequently, the WCJ awarded Claimant attorney's fees. (WCJ's 10/23/00 Findings of Fact, No. 8 and Conclusions of Law, No. 5.)

On appeal, the WCAB reversed, accepting Employer's argument that the WCJ applied the wrong burden of proof and that, under the appropriate standard, Claimant failed to carry his burden of proof. Additionally, because section 440(a)

---

2. The WCJ also noted that, between July 30, 1996, and January 5, 1998, Claimant returned to light duty work at his pre-injury wage on multiple occasions; thus, the WCJ held that Employer was entitled to a suspension during those periods, as well as the period from January 5, 1998, through January 12, 1998, when Claimant returned to work.

of the Workers' Compensation Act[3] (Act), pertaining to counsel fees for an unreasonable contest, applies only to successful claimants, and because, here, the WCAB's decision rendered Claimant unsuccessful, the WCAB reversed the WCJ's award of attorney's fees. Claimant has petitioned this court for review of the WCAB's order.[4]

As a threshold matter, we must determine Claimant's proper burden of proof to establish his entitlement to reinstatement of benefits. Ordinarily, a claimant seeking reinstatement of suspended benefits must establish that the reasons for the suspension no longer exist. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). Specifically, the claimant must establish that, through no fault of his or her own, his or her earning power is once again adversely affected by his or her disability and that the disability which gave rise to the original claim continues. *Id.* However, in cases where the suspension of benefits is based on a finding that the claimant has failed to pursue job(s) in good faith, the claimant's burden of proof in a reinstatement petition is different; specifically, the claimant must prove a change in his or her condition such that he or she can no longer perform the job(s) offered to him or her which served as the basis for the earlier suspension. *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth.362, 614 A.2d 779 (1992), *appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993). Moreover, a claimant who rejects a position in bad faith cannot later cure that bad faith by obtaining a

position on his or her own. *Liggett v. Workmen's Compensation Appeal Board (SEPTA)*, 669 A.2d 513 (Pa.Cmwlth.1996), *appeal denied*, 544 Pa. 686, 679 A.2d 231 (1996); *Korol v. Workmen's Compensation Appeal Board (Sewickley Country Inn)*, 150 Pa.Cmwlth.279, 615 A.2d 916 (1992); *see also Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corporation)*, 158 Pa.Cmwlth.547, 632 A.2d 596, 599 (1993) (discussing *Korol*, stating that bad faith becomes "fixed" and the claimant is bound by his actions), *appeal granted and remanded*, 537 Pa. 433, 644 A.2d 729 (1994).

Here, the WCJ applied the burden of proof set forth in *Pieper*, whereas the WCAB relied on *Liggett* and *Spinabelli*. In doing so, the WCAB reasoned that because the WCJ's July 20, 1999, order found Claimant acted in bad faith, and because Claimant's subsequent employment did not extinguish that bad faith, Claimant had a higher burden of proof.

Employer maintains that the WCAB applied the appropriate burden of proof; however, Claimant argues that the burden of proof applied by the WCJ is the correct burden under the circumstances here. Claimant contends that he should not be "perpetually branded with a 'scarlet letter[ ] of bad faith,'" (Petition for Review, ¶ 5(b)), where he returned to work at a light duty job offered by Employer, was transferred by Employer to another light duty job and later laid off. Claimant argues that, under these circumstances, his entitlement to reinstatement of benefits should not require the heightened burden of proof. In fact, Claimant maintains that

---

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996.

4. Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Wintermyer v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002).

when the WCJ issued his July 20, 1999, decision, the WCJ only awarded a limited suspension based on bad faith from February 1998 through August 1998, and the WCJ acknowledged that the suspension of benefits after August 1998 was due to Claimant's return to work in the light duty position offered by Employer. Claimant further maintains that the WCAB failed to acknowledge his return to work and the supplemental agreement signed by the parties, which suspended his benefits.[5] We agree with Claimant that the WCJ applied the correct burden of proof because we conclude that the cases relied on by Employer are distinguishable from the case before us.

In *Spinabelli*, the employer filed a petition for modification or suspension, alleging that the claimant refused employment within his physical restrictions. The referee[6] modified the claimant's benefits based on his finding that the employer had offered the claimant suitable jobs which he refused in bad faith. Approximately one month after the referee's decision, the claimant filed a reinstatement petition, alleging that he had attempted to return to light duty work, but that his employer informed him that no light duty work was available. The referee reinstated the claimant's benefits; however, the WCAB reversed, concluding that the claimant had to prove a change in his physical condition to have his benefits reinstated. On appeal,

this court affirmed the WCAB. Stating that an employer does not have the responsibility of keeping a job open indefinitely while waiting for the claimant to decide when he wants to work, we concluded that the claimant's loss of earning power was not due to his disability but, rather, to his bad faith in pursuing available work within his limitations. Thus, we held that the claimant had to prove a change in his condition such that he could no longer perform the jobs offered to him which served as the basis for his earlier modification of benefits.

In *Korol*, the employer filed a modification or suspension petition, alleging that light duty work was available that the claimant could perform with no loss of earnings; Employer was granted a supersedeas. After the employer filed its suspension petition and had been granted a supersedeas, the claimant obtained a position on her own at reduced wages. The referee granted a modification of benefits as of the date the employer made the position available to the claimant; however, the referee reinstated the claimant's partial disability benefits as of the date the claimant obtained employment on her own, concluding that the claimant made a good faith effort by obtaining employment on her own. The WCAB reversed, and, on appeal, we affirmed the WCAB, holding that a claimant who rejects a position in

---

**5.** Claimant argues that the supplemental agreement controlled the parties' status at the time of his lay-off. Employer argues that Claimant has waived the issue regarding the effect of the supplement agreement by failing to raise it in his petition for review. Nevertheless, Employer contends that Claimant cannot avoid the consequences of the WCJ's July 20, 1999, decision by relying on the rules of the Bureau of Workers' Compensation which obligate an employer to secure the supplemental agreement upon a claimant's return to work. While we acknowledge that Claimant failed to mention the supplemental

agreement in his petition for review, Claimant clearly raised the issue of the effect of his return to work on August 18, 1998. Moreover, our result would be the same even if the parties had not signed the supplemental agreement when Claimant returned to work on August 18, 1998.

**6.** Prior to the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, effective August 31, 1993, workers' compensation judges were called referees.

bad faith cannot remedy that bad faith by obtaining a position on her own.

In *Liggett*, the claimant's benefits were modified to a partial disability based on a finding that the claimant had failed to apply in good faith for employment within his physical capabilities. After the WCJ's award, but during the appeal process, the claimant obtained employment on his own. The claimant subsequently resigned, however, alleging that his work injury had worsened, and he filed a reinstatement/modification petition. Relying on *Korol* and *Spinabelli*, this court held that the claimant's bad faith was not eradicated by his subsequent employment, and, therefore, he would have to prove that his physical condition worsened.

 Because of the unique circumstances in the present case, these cases do not control the outcome here. While we reaffirm our belief, espoused in *Spinabelli*, that an "employer [does not have] the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work," 614 A.2d at 780, importantly, we note that, here, Employer apparently chose to keep the light duty sorter position open and allowed Claimant to return to the same position he refused some six months prior. Additionally, and not insignificantly, unlike the claimants in *Spinabelli* and *Liggett*, we note that Claimant returned to light duty work *prior* to the WCJ's decision granting Employer's suspension petition, while Claimant still

was receiving total disability benefits. Similarly, unlike the claimant in *Korol*, Claimant returned to light duty work after Employer's request for supersedeas was denied. In other words, unlike the claimants in *Spinabelli*, *Liggett* and *Korol* who were no longer receiving total disability benefits at the time they attempted to, or did, return to work, Claimant, here, was receiving total disability benefits when he accepted Employer's offer of light duty and returned to work.[7] By reoffering the light duty job to Claimant, Employer allowed Claimant to cure his bad faith by accepting that position. Employer cannot annul the effect of its decision to reemploy Claimant by attempting to reconstitute his prior bad faith. Therefore, Claimant is akin to those claimants who have accepted and performed a job other than the time of injury job. *See Bennett* (discussing the test for an employee who accepted and performed a light duty job versus an employee who did not accept the light duty job). Accordingly, the WCJ applied the correct burden of proof, and, to have his benefits reinstated, Claimant bore the burden of establishing that, through no fault of his own, his earning power is again adversely affected by his disability and that the disability which gave rise to the original claim continues. *See Pieper.*

 Through Claimant's credible, uncontroverted testimony that he was laid off when Employer had no other light duty jobs available for him, Claimant provided evidence sufficient to meet that burden.[8]

---

7. Claimant points out that he was laid off just sixteen days after the WCJ's July 20, 1999, decision granting Employer's suspension, and, at the time of his lay-off, Claimant had been back to work for almost a full year. (Claimant's brief at 9.)

8. Although the WCJ relied on the testimony of Claimant's physician as well to support this finding, we note that Claimant's testimony alone is sufficient to establish that his disabili-

ty continues. *See Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994) (reasoning that because the nature of a suspension actually acknowledges a continuing medical injury and suspends benefits only because the claimant's earning power is currently not affected by the injury, the testimony of a claimant alone can satisfy the burden of establishing that the work-related injury continues).

Accordingly, we reverse that portion of the WCAB's order reversing the WCJ's decision to reinstate Claimant's benefits.

We next must address the question of Claimant's entitlement to attorney's fees for an unreasonable contest. "Whether an employer's contest is reasonable is a question of law fully reviewable by this [c]ourt. Furthermore, in determining the reasonableness of an employer's contest, the primary question is whether or not the contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment." *Montgomery Hospital v. Workers' Compensation Appeal Board (Armstrong)*, 793 A.2d 182, 190 (Pa. Cmwlth.2002) (citation omitted). Here, there clearly was a genuinely disputed issue regarding the proper burden of proof, and, in turn, the evidence needed to satisfy that burden. Based on existing case law regarding reinstatement of benefits following suspension, Employer believed that Claimant could not cure his bad faith, and, therefore, he had to prove a worsening of his condition. Ultimately, we disagree with Employer; however, given the state of the law, we cannot conclude that it was unreasonable for Employer to have challenged Claimant's reinstatement petition. Accordingly, the WCJ's imposition of attorney's fees pursuant to section 440 of the Act was improper, and we affirm that portion of the WCAB's order that denied Claimant attorney's fees.[9]

### ORDER

AND NOW, this 18th day of February, 2003, the order of the Workers' Compensation Appeal Board (WCAB), dated June 21, 2002, is hereby reversed in part and affirmed in part in accordance with the foregoing opinion.

---

**9.** This court may affirm the order of the tribunal below regardless of the reasons given, if the order is correct for any reason. *Barnett v. Workers' Compensation Appeal Board (Paul Riggle & Sons)*, 718 A.2d 901 (Pa.Cmwlth. 1998), *appeal denied*, 559 Pa. 680, 739 A.2d 544 (1999).