Tyson Shared Services, Inc.,      :
            Petitioner      :
            :
       v.      :
            :
Workers' Compensation Appeal      :
Board (Perez),      :      No. 1048 C.D. 2019
            Respondent      :      Submitted: November 8, 2019

BEFORE:      HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                             FILED: February 3, 2020

Tyson Shared Services, Inc. (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) July 11, 2019 order affirming, as modified, the Workers' Compensation Judge's (WCJ) decision granting Gualberto Perez's (Claimant) Petition to Reinstate WC Benefits (Reinstatement Petition). The issue before the Court is whether the Board erred by modifying the WCJ's decision.

On December 3, 2014, Claimant injured his right shoulder while working as a mechanic for Employer. Claimant returned to work in a light-duty janitorial capacity. On December 30, 2014, Claimant underwent right shoulder surgery during which Claimant's surgeon, Joel A. Horning, M.D. (Dr. Horning), performed a torn rotator cuff repair and a decompression. On January 15, 2015, Claimant filed a Claim Petition for his right shoulder injury. On February 2, 2015, Employer filed an answer to the Claim Petition, in which it denied Claimant's material allegations. On February 9, 2015, Dr. Horning released Claimant to return

to work with restrictions.  By February 20, 2015 letter, Employer requested Claimant to return to work on March 2, 2015, in a modified-duty janitorial position consistent with Dr. Horning's work restrictions and with no earnings loss (2015 Job Offer). Claimant did not return to work.  On March 4, 2015, Employer issued a medical-only Notice of Compensation Payable (NCP) that described Claimant's December 3, 2014 injury as a work-related, right shoulder rotator cuff tear.

The WCJ held hearings on February 25, June 5, and July 27, 2015, and, on November 2, 2015, denied and dismissed the Claim Petition.  The WCJ also suspended Claimant's disability benefits as of March 2, 2015, due to the 2015 Job Offer and Claimant's failure to return to work.  The WCJ concluded that Claimant failed to meet his burden of proving that he suffered ongoing disability beyond March 2, 2015, due to his work injury.

On March 3, 2017, Claimant filed the Reinstatement Petition, alleging that his right shoulder injury worsened after a third right shoulder surgery on August 10, 2016.  Employer filed its answer thereto, admitting that Claimant underwent work-related shoulder surgery and was entitled to reinstatement of temporary total disability benefits for a limited time period.

On March 27, 2017, Claimant testified at a WCJ hearing in support of his Reinstatement Petition.  According to Claimant, Dr. Brian Brislin (Dr. Brislin)[1] performed Claimant's August 10, 2016 shoulder surgery.  Claimant stated that (at the time of his testimony) he could not return to work in any fashion.  On cross-examination, Claimant admitted that he last saw Dr. Brislin on December 6, 2016, and that, consistent with Dr. Brislin's office notes, Dr. Brislin imposed a 20-pound lifting restriction when lifting with both hands, with no more than 10 pounds of lifting using just the right arm.  *See* Reproduced Record (R.R.) at 195a.  Claimant

---

[1] Dr. Brislin did not testify.

2

also acknowledged that Dr. Brislin had released him to light-duty work before the December 6, 2016 visit, but Claimant could not recall the specific date. *See id.* at 196a.

Norman B. Stempler, D.O. (Dr. Stempler) testified on Claimant's behalf that he treated Claimant both before and after the August 10, 2016 surgery. According to Dr. Stempler, he first examined Claimant after the surgery on December 16, 2016, and found him to have pain and very limited movement. Dr. Stempler explained that he prescribed Claimant a course of physical therapy. Dr. Stempler saw Claimant again on February 15, 2017, at which time he observed that Claimant had some improved but limited range of motion, but had continuing pain. Dr. Stempler described that he also treated Claimant on March 10 and May 5, 2017. On May 5, 2017,[2] Dr. Stempler recalled that he re-enrolled Claimant in physical therapy because he believed Claimant's condition had regressed. Dr. Stempler recounted that as of the last office visit, Claimant was still experiencing right shoulder pain, and also complained of left shoulder pain caused by overcompensating for the right shoulder. Dr. Stempler opined that Claimant was not capable of returning to full-duty work after the August 10, 2016 surgery. Further, Dr. Stempler stated that he did not believe Claimant could perform any work, given the right shoulder restricted movement and pain, and the "significant amount of internal derangement of [Claimant's] left shoulder." R.R. at 57a. However, on cross-examination, Dr. Stempler admitted that, as of February 15, 2017, he believed that Claimant was 85% to 95% recovered from the work injury, and he released Claimant to modified-duty work. Nonetheless, Dr. Stempler believed that Claimant's condition regressed thereafter.

---

[2] Although Dr. Stempler's notes prescribing physical therapy were dated May 2, 2017, Dr. Stempler believed the notes were dated incorrectly and referred to the May 5, 2017 visit.

3

Matthew J. Espenshade, D.O. (Dr. Espenshade), a board-certified orthopedic surgeon, testified on Employer's behalf that he performed Claimant's independent medical examination (IME) on August 8, 2017. Dr. Espenshade described that he reviewed Claimant's treatment records and noted that Dr. Brislin placed Claimant on light-duty work restrictions on October 25, 2016.[3]

On March 1, 2018, the WCJ found Claimant's testimony credible in part - specifically, that Claimant was unable to work while he recovered immediately following the August 10, 2016 surgery. However, based on Dr. Brislin's October 25, 2016 office notes clearing Claimant to return to modified-duty work, the WCJ rejected Claimant's testimony that he remained unable to work thereafter. The WCJ also rejected Dr. Stempler's testimony in its entirety on the basis that it was inconsistent and lacked credibility. Instead, the WCJ credited Dr. Espenshade's testimony as "much more credible and worthy of belief." R.R. at 32a, Finding of Fact (FOF) 15.

The WCJ found relative to Dr. Espenshade's testimony:

Dr. Espenshade reviewed the February [] 2015 modified-duty job offer letter that was submitted in the prior round of litigation . . . [and] reviewed the testimony . . . concerning the duties of the offered position. Based upon his review of the testimony and the job offer letter and physical restrictions placed upon Claimant by Dr. Brislin and himself, Dr. Espenshade opined that Claimant was physically capable of performing the duties of the offered position as of the October 25, 2016 release to modified-duty work by Dr. Brislin[.]

---

[3] Claimant did not object to Dr. Espenshade's testimony referencing Dr. Brislin's October 25, 2016 modified-duty work restrictions, or that Dr. Brislin's office notes upon which Dr. Espenshade relied were not offered into evidence.

4

R.R. at 31a, FOF 5(f).  The WCJ also found:

> Dr. Espenshade opined that there is no material difference between the work restrictions placed upon Claimant by Dr. Horning in reference to the 2015 modified-duty job offer, and the work restrictions placed upon Claimant by Dr. Brislin [on] October 25, 2016, or the work restrictions he himself has placed upon Claimant in August of 2017.

*Id.*, FOF 5(g).  The WCJ further stated:

> Dr. Espenshade credibly found based upon his review of the medical records that Claimant was capable of returning to modified-duty work, as per Dr. Brislin, as of October 25, 2016.  Dr. Espenshade pointed out that the restrictions placed upon Claimant by Dr. Brislin as of October 25, 2016 were essentially the same as the work restrictions placed on Claimant by Dr. Horning in February of 2015.  Dr. Espenshade conducted his own extensive physical examination of Claimant on August 8, 2017, and determined that Claimant could return to modified-duty work with the similar restrictions placed on Claimant by both Dr. Horning and Dr. Brislin.  Dr. Espenshade carefully reviewed the [2015 Job Offer] letter regarding the light-duty janitorial position and determined that this position fell with[in] the work restrictions as outlined by Dr. Brislin as of October 25, 2016, and certainly fell within the restrictions he placed upon Claimant following the August 8, 2017 evaluation.

R.R. at 32a, FOF 15.  Accordingly, the WCJ found that Claimant was unable to work from August 10, 2016 through October 25, 2016, when Dr. Brislin cleared Claimant for modified-duty work.

> In addition, the WCJ

> f[ou]nd[] as fact[,] based [on] the testimony of Dr. Espenshade[,] that Claimant regained the ability to perform modified-duty work as per Dr. Brislin on October 25, 2016, and that this work release was essentially the same level of modified-duty work that Dr. Horning had cleared Claimant to perform in 2015.

5

R.R. at 32a, FOF 17.  Finally, the WCJ found

> as fact that[,] as of October 25, 2016, Claimant had recovered sufficiently to perform the [duties of the 2015 Job Offer] he refused in 2015 [and] . . . that the previously refused modified-duty janitorial job fell not only within the restrictions as outlined by Dr. Brislin as of October 25, 2016, but was also within the restrictions as determined by Dr. Espenshade as of his August 8, 2017 evaluation of Claimant.

R.R. at 33a, FOF 18.  Therefore, the WCJ concluded that Claimant had failed to prove an ongoing disability after October 25, 2016, since, as Dr. Espenshade explained based on Dr. Brislin's restrictions, Claimant became capable of performing the previously refused janitorial job as of October 25, 2016.  Under the circumstances, the WCJ granted Claimant's Reinstatement Petition in part and directed Employer to pay Claimant benefits for the period from August 10, 2016 through October 24, 2016.

Claimant appealed to the Board arguing, *inter alia*, that substantial record evidence did not support the WCJ's finding that Claimant was capable of returning to modified work on October 25, 2016.  Specifically, Claimant contended that the WCJ erred because Dr. Espenshade did not examine Claimant until August 8, 2017, Dr. Espenshade improperly relied on Dr. Brislin's hearsay opinion to conclude that Claimant was capable of performing the duties of the 2015 Job Offer as of October 25, 2016, and Dr. Brislin was the only expert who could testify with respect to Claimant's condition on October 25, 2016, but did not do so.

By July 11, 2019 decision, the Board affirmed the WCJ's decision suspending Claimant's wage loss benefits, but modified the suspension date from October 25, 2016 to August 8, 2017, the date of Dr. Espenshade's IME.  The Board explained:

6

A medical expert is permitted to express an opinion based, in part, upon reports of others that are not in evidence but upon which the expert customarily relies in the practice of his profession. Here, however, Dr. Espenshade did not rely on Dr. Brislin's October 2[5], 2016 work restrictions to opine that Claimant was capable of returning to the previously offered, modified[-]duty job as of October 2[5], 2016. Rather, Dr. Espenshade opined that the work restrictions were similar. No evidence was introduced that Dr. Brislin expressed an opinion that Claimant was capable of returning to that job offer, nor did [Employer] introduce the testimony of Dr. Brislin, which it could have done. Additionally, Dr. Espenshade admitted that his opinion about Claimant's work restrictions was limited to the time of the IME. We therefore modify the WCJ's suspension of Claimant's wage loss benefits . . . to a suspension as of August 8, 2017, the date of the IME, because we determine that the WCJ improperly relied upon hearsay evidence that was not corroborated by any other competent evidence of record.

Board Decision at 5-6, R.R. at 18a-19a (citation omitted). Employer appealed to this Court.[4]

At the outset,

> [o]rdinarily, a claimant seeking reinstatement of suspended benefits must establish that the reasons for the suspension no longer exist. Specifically, the claimant must establish that, through no fault of his or her own, his or her earning power is once again adversely affected by his or her disability and that the disability which gave rise to the original claim continues. **However, in cases where the suspension of benefits is based on a finding that the claimant has failed to pursue job(s) in good faith, the claimant's burden of proof in a reinstatement petition is different; specifically, the claimant must prove a change in his or her condition such that he or she can no longer**

---

[4] "This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." *World Kitchen, Inc. v. Workers' Comp. Appeal Bd. (Rideout)*, 981 A.2d 342, 346 n.5 (Pa. Cmwlth. 2009).

7

> **perform the job(s) offered to him or her which served as the basis for the earlier suspension**.

*Douglas v. Workers' Comp. Appeal Bd. (Harmony Castings, Inc.)*, 819 A.2d 136, 140 (Pa. Cmwlth. 2003) (emphasis added; citations omitted).

Employer argues that, in faulting the WCJ for crediting Dr. Brislin's restrictions where Dr. Brislin did not testify, the Board misstated the burden of proof in a reinstatement petition by ignoring ***Claimant's* burden to prove ongoing disability**. Specifically, Employer contends that the Board mistakenly placed the burden on Employer to prove that Claimant was no longer disabled and concluded that evidence of Dr. Brislin's October 25, 2016 release to modified duty was hearsay and, as such, extended benefits until the August 8, 2017 IME date. Employer asserts that the WCJ properly suspended benefits as of October 25, 2016.

In placing the burden of proof on Employer, the Board stated:

> Here, both parties agreed that Claimant suffered a work-related injury of a right shoulder rotator cuff tear and that he had a period of temporar[y] total disability resulting from his right-shoulder surgery on August [10], 2016. As Claimant was entitled to a reinstatement of benefits, [Employer] thus bore the burden of proof that [sic] to show that [Claimant's] loss in earnings was not caused by the disability arising from the work-related injury. [Employer] was able to meet its burden of proof because it was able to show under [*Pitt Ohio Express v. Workers' Compensation Appeal Board (Wolff)*, 912 A.2d 206 (Pa. Cmwlth. 2006),] that Claimant made a bad-faith rejection of a previously modified position.[5] Therefore, the WCJ did not err in suspending Claimant's wage loss benefits.

---

[5] "In this context, bad faith does not mean 'overt malfeasance on the part of the claimant, but is merely the characterization of [the c]laimant's action for refusing to follow up on a job referral without a sufficient reason.'" *Napierski v. Workers' Comp. Appeal Bd. (Scobell Co., Inc.)*, 59 A.3d 57, 61 (Pa. Cmwlth. 2013) (quoting *Johnson v. Workmen's Comp. Appeal Bd. (McCarter Transit, Inc.)*, 650 A.2d 1178, 1180 (Pa. Cmwlth. 1994)).

Board Decision at 4, R.R. at 17a (citation omitted). Although the Board concluded that the WCJ properly suspended Claimant's benefits, the Board effectively imposed a burden on Employer to provide evidence that Claimant was no longer disabled so as to entitle Employer to a suspension of Claimant's benefits.

In *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702 (Pa. Cmwlth. 2011), the claimant suffered a work-related back injury in 2005 while working as a manual laborer for Hillis-Carnes Engineering Associates (Hillis). Hillis accepted the injury under an NCP and the claimant thereafter returned to work. In January 2006, while working for a different employer, the claimant exacerbated his 2005 work-related back injury. Hillis accepted liability and paid total disability benefits for one month after which benefits were suspended. In October 2006, while working for a different employer, the claimant experienced intense back pain while bending which radiated down his leg into his foot. The claimant filed a reinstatement petition seeking temporary total disability benefits as of November 1, 2006. The claimant testified about his ongoing physical condition and disability and offered medical evidence that he could not return to work due to the original work-related injury. Hillis presented medical testimony that the claimant's injury was unrelated to the original work-related injury and also offered an April 24, 2008 surveillance videotape of the claimant (the same day he testified for the third time before the WCJ) which depicted claimant moving without difficulty and performing work.

The WCJ concluded that the claimant was disabled from performing his usual occupation as of November 1, 2006, due to the original work-related injury. The WCJ reinstated benefits from November 1, 2006 until April 23, 2008, and suspended benefits as of April 24, 2008, the date of the surveillance videotape. The Board affirmed the WCJ's decision. The claimant appealed, arguing that the Board applied an incorrect burden of proof because, once he established a disability, the

burden shifted to the employer to prove that his ongoing earnings loss was not caused by the work injury.

This Court affirmed the Board's decision, explaining:

Where an injured worker petitions for reinstatement, he needs to establish that 'his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim.' *Bufford v. Workers' Comp*[.] *Appeal B*[*d.*] *(N*[.] *Am*[.] *Telecom)*, . . . 2 A.3d 548, 558 ([Pa.] 2010). A reinstatement petition may be prompted by a number of circumstances. Here, [the c]laimant asserted that his disability was caused by pain when he aggravated his 2005 injury while tying his shoe. In *Bufford*, the claimant sought a reimbursement of total disability when the employer ended his light[-]duty job. Because every reinstatement is different, the claimant's burden of proof will be different.

Where a claimant seeks a reinstatement of benefits following a suspension, there remains a presumption that the work-related injury has not fully resolved. In a suspension, the claimant's work injury, although not fully resolved, does not adversely affect his ability to work. Thus, when petitioning for reinstatement the claimant 'is not required to produce medical evidence on the cause of his disability.' *City of Phila*[.] *v. Workers' Comp*[.] *Appeal B*[*d.*] *(McGinn)*, 879 A.2d 838, 842 (Pa. Cmwlth. 2005). However, **the claimant must establish 'that his earning power is once again adversely affected' and that 'it is the same disability** . . . **for which he initially received** [WC] **benefits**.' *Riley Welding & Fabricating, Inc. v. Workmen's Comp*[.] *Appeal B*[*d.*] *(DeGroft)*, . . . 608 A.2d 598, 600 ([Pa. Cmwlth.] 1992) (emphasis omitted). The claimant may seek reinstatement of partial or total disability.

Here, [the c]laimant sought 'temporary total disability,' and he proved that as of November 1, 2006, his back and leg pain rendered him unable to work. His medical evidence correlated that pain to his 2005 work injury. Such evidence was appropriate to support reinstatement. [The c]laimant argues that once he met that burden, he was entitled to continued total disability unless and until [the e]mployer

10

showed that his loss of earnings was not caused by his 2005 injury. We disagree.

*Soja*, 33 A.3d at 707-08 (citations and footnote omitted; emphasis added).

In *Soja*, "the factual issue in the reinstatement petition was whether the [c]laimant's loss of wages was caused by ongoing pain. Given this issue, . . . **it was [the c]laimant's burden to prove that the pain** . . . **persisted**, not dissipated, **through the pendency of the reinstatement proceeding**."[6] *Id*. at 708-09 (emphasis added). This Court further noted that the employer "did not have [the] burden of proof in [the] reinstatement petition, unlike a reinstatement where [a] claimant's light[-]duty job has ended[.]" *Id*. at 708. The Court concluded:

> [The c]laimant offered evidence to prove a continuing disability. **When that evidence was found to be false,** [the c]laimant argued that proof of disabling pain for a single day . . . shifted the burden to [the e]mployer to prove a cessation of pain. [The c]laimant cites no precedent to support that broad proposition. The nature of the reinstatement and the issue raised therein determines the burden of proof. **Here**, [**the c]laimant's evidence did not prove a continuation of disabling pain through the pendency of the reinstatement petition**.

---

[6] *See also Mader v. Workmen's Comp. Appeal Bd. (USAir, Inc.),* 669 A.2d 511 (Pa. Cmwlth. 1996) (affirming the WCJ's reinstatement of benefits for a closed period where the claimant failed to prove that loss in wages beyond the closed period resulted from a work-related injury). In *Miller v. Workers' Compensation Appeal Board (Johnson Matthey Holdings, Inc.)*, (Pa. Cmwlth. No. 167 C.D. 2011, filed June 16, 2011), relying in part on *Mader*, this Court explained:

> This case involves a reinstatement petition filed by [the c]laimant. Therefore, [the c]laimant was **required** to prove that his disability had increased or reoccurred and that his physical condition had actually changed in some way, **along with the duration of his disability**. In other words, in this proceeding, the WCJ, based upon the evidence presented, could have approved compensation for an indefinite period of time, for a closed period of time, or not at all.

*Miller*, slip op. at 4 (citations omitted; bold and underline emphasis added). Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported opinions are not binding precedent, but may be cited for their persuasive value. *Miller* is cited for its persuasive value.

11

*Id.* at 709 (emphasis added).

Similarly, in the instant case, the factual issue is whether Claimant's loss of wages was caused and continued to be caused by his work-related injury. Given that Claimant was found to have wrongly refused the 2015 Job Offer, Claimant had the burden to demonstrate "**through the pendency of the reinstatement proceeding**[,]" *Soja*, 33 A.3d at 709 (emphasis added), "a change in his . . . condition such that he . . . [could] no longer perform the job(s) offered to him . . . which served as the basis for the earlier suspension." *Douglas*, 819 A.2d at 140.

Thus, the burden was on **Claimant** to demonstrate that he was disabled for the period in question. The WCJ found credible[7] Claimant's testimony that he was unable to work immediately following the August 10, 2016 surgery. However, the WCJ rejected Claimant's assertion that Claimant continued to be "unable to work in any capacity" because it was inconsistent with both Dr. Espenshade's testimony and Dr. Brislin's office notes clearing Claimant to return to modified-duty work on October 25, 2016. WCJ Decision at 6, R.R. at 32a, FOF 13. The WCJ also found that Claimant's assertion lacked credibility based on Claimant's demeanor and appearance before the WCJ. Essentially, the WCJ found Claimant's testimony regarding disability credible only in part, and rejected Claimant's testimony of ongoing disability beyond the date Dr. Brislin released Claimant to modified-duty work. Further, the WCJ "reject[ed] [Dr. Stempler's] testimony in its entirety." WCJ

---

[7]   The law is well established that '[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight.' *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). 'The WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses.' *Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

*Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015).

Decision at 6, R.R. at 32a, FOF 14. Thus, Claimant's evidence that he continued to be disabled beyond October 24, 2016, was found not to be credible, and there is no other credible evidence supporting Claimant's position.[8] Accordingly, Claimant did not meet his burden of proving ongoing disability beyond October 24, 2016, and the Board erred when it modified the WCJ's decision.

For all of the above reasons, the Board's decision is vacated and the WCJ's decision is reinstated.

_____
ANNE E. COVEY, Judge

---

[8] To the extent Claimant challenges Dr. Espenshade's use of Dr. Brislin's office notes on the basis that such office notes were hearsay, this Court explained:

> [I]t has long been held that a medical witness may express an opinion based upon medical records of others even if those records were not introduced into evidence[,] so long as they are the kind of records upon which the medical profession customarily relies in the practice of [its] profession.

*Mithani v. Workers' Comp. Appeal Bd. (Mt. Airy Lodge)*, 730 A.2d 566, 569 (Pa. Cmwlth. 1999). The Pennsylvania Superior Court has explained:

> [A] physician will often base his or her diagnosis on information obtained through other sources such as statements from patients, nurses' reports, hospital records, and laboratory tests. [*Primavera v. Celotex Corp.*, 608 A.2d 515, 520 (Pa. Super. 1992)]. 'The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes.' *Id.* 'When the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise.' *Id.* (quoting *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971)).

*Woodard v. Chatterjee*, 827 A.2d 433, 444 (Pa. Super. 2003).

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyson Shared Services, Inc., : 
               Petitioner : 
                : 
           v. : 
                : 
Workers' Compensation Appeal : 
Board (Perez), :     No. 1048 C.D. 2019
             Respondent : 

## O R D E R

AND NOW, this 3rd day of February, 2020, the Workers' Compensation Appeal Board's July 11, 2019 decision is VACATED, and the Workers' Compensation Judge's March 1, 2018 decision is REINSTATED.

_____
ANNE E. COVEY, Judge